UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARK BOSHAW,

        Plaintiff,

v.

SPARTAN STORES, INC.,

        Defendant.
_____/

Case No. 2:04-CV-293

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Defendant Spartan Stores, Inc.'s Motion for Summary Judgment. The Motion has been fully briefed and oral argument is unnecessary.

**BACKGROUND**

    Plaintiff Mark Boshaw is a former employee of Defendant Spartan Stores, Inc. He was terminated in January 2004 by Defendant and has sued under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"); and state law.

    Plaintiff began working for Defendant at the Glen's supermarket in St. Ignace, Michigan in 2001. (Boshaw Dep. 45.) He held the position of Assistant Store Director. (*Id.* 46.) He reported to Dale Hess, the Store Director. (*Id.*) Plaintiff was regarded as a good employee and received positive work evaluations. (Pl.'s Ex. 6.)

    In January 2004, Dan Ferris, an employee of the Meat Department, reported to Hess that his time had been mis-recorded in the time records. (Hess Dep. 29, 35.) Hess recognized from the time records that Ferris' time had been adjusted (to his detriment) and Ferris further told Hess that he had not made certain punches on his time card which were recorded in the time records. (Ferris Dep. 24-

25.) The computer time records covering Ferris' time indicated that Plaintiff had made several edits to Ferris' time records so as to deprive him of worked hours. (Baumgartner Aff. ¶ 13.) After Hess began investigating, he learned that other employees were also complaining about losing work hours through the time keeping system. (Hess Dep. 30.) Hess traced these additional problems to Plaintiff's editing of time records (due to the use of Plaintiff's identification number). (*Id.*)

As might be expected, Hess called a meeting with Plaintiff on January 5, 2004 to inquire about the time cards. Plaintiff admitted that his computer identification number was linked to the time record changes in question and admitted that he had done payrolls, but said that he did not remember the incidents. (Hess Dep. 37-38, 81-82.) Plaintiff then interjected that he had just been informed of his dog's death by his wife. (Boshaw Dep. 74.) He was allowed to leave the meeting (*id.* 75) and later that night sought hospital care for a panic attack. (*Id.* 77.)

The next day, the meeting resumed with Joe Murphy (Defendant's regional district manager) in attendance. (Boshaw Dep. 85.) Murphy told Plaintiff that there would be an investigation of the time records. (*Id.* 86-87.) He was not discharged at that time. (*Id.*) Following the meeting, Plaintiff requested and received medical leave due to a panic attack. (Baumgartner Aff. ¶ 4 & Attach. A.) The leave continued until January 23, 2004. (*Id.* ¶ 5.)

While Plaintiff was on leave, Beth Baumgartner from the Human Resources Department checked the time records. She concluded based on her review of the individual entries that Plaintiff had made alterations to the records without authority. (Baumgartner Aff. ¶¶ 14-16.) This was communicated to Murphy and Hess, and the three jointly agreed to terminate Plaintiff. (*Id.*) Plaintiff was informed on January 23, 2004 of his termination. (Boshaw Dep. 90.)

**LEGAL STANDARDS**

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

**1. ADA Claims**

Plaintiff's Amended Complaint has alleged that he was wrongfully discharged because of his disabilities–depression, obsessive compulsive disorder and panic attacks. In order to establish such a *prima facie* ADA claim, Plaintiff must prove the following elements: (1) he is disabled; (2) he is otherwise qualified for the job, with or without a reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the disability at the time of the employment decision; and (5) either the position remained opened or was filled by another employee. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996). If a *prima facie* claim is proven, then the employer may defend based on a legitimate non-discriminatory reason for discharge. *Id.* The employee may then counter the proffered explanation by evidence tending to show that the explanation is a pretext for unlawful discrimination. *Id.*

Of course, the starting point of ADA analysis is the question of whether Plaintiff has a disability. This case is distinct from other cases in which depression and related mental disorders has been recognized as a disability because here there is scant medical evidence showing chronic treatment of these disorders. Plaintiff was hospitalized for a month in 1990 for depression arising from a divorce. (Boshaw Dep. 105.) He received prescriptions for Zoloft (for depression) and Valium (for the panic attack) on the day of the panic attack (*see* Pl.'s Ex. 1 at 3) and, according to him, these prescriptions made him feel "back to normal." (Boshaw Dep. 42.) He has testified that his conditions limited his recreation, sleep, communication with family and social activities. However, the examples given, apart from vague references, *see* Boshaw Dep. at 25-35, do not seem directed toward the ADA definition of disability–a physical or mental impairment that substantially limits one or more of the

major life activities of an individual. *See* 42 U.S.C. § 1202(2)(A). The health care provider report explaining Plaintiff's January 2004 medical leave only diagnosed a mental health condition of undetermined duration. (Pl.'s Ex. 2 at 2.) There is no medical evidence on this record to document that Plaintiff suffered a chronic and regular mental health disability as opposed to episodic problems induced by stress. The concrete examples given–difficulty in concentration which made it difficult for him to referee ice hockey games or complete a proper golf swing–are far afield from the ADA definition of disability.

Given this record, binding precedent compels the grant of summary judgment. First, because Plaintiff's medication sufficiently treats his supposed disability, he is not disabled. *See Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521 (1999); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317 (6th Cir. 2001); *Krocka v. City of Chicago*, 203 F.3d 507, 513 (7th Cir. 2000). Second, the mental conditions at issue have only shown to be temporary or episodic impairments occasioned by stress and not chronic impairments affecting a "major life activity." *See Rousch v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996); *see also Toyota Motor Mfg. v. Williams*, 534 U.S. 184,198 (2002); 29 C.F.R. § 1630.2(j)(ii)-(iii) (July 1, 2005). For these reasons, the Court finds that there is no genuine issue of material fact and Defendant is entitled to summary judgment on the ADA claim since no reasonable jury could conclude on the record that Plaintiff is disabled.

Furthermore, since Defendant has offered a legitimate non-discriminatory reason for discharge, Plaintiff must proffer evidence to show that the discharge was pretextual. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). In this case, there is no evidence on this record to either refute Defendant's explanation for the discharge or otherwise show discrimination. The record shows only that Defendant made an impartial investigation of the time records incidents and discharged Plaintiff

5

because of its investigation. There is nothing in the record suggesting that the discharge was motivated by discriminatory animus nor that the conclusions of the investigation were untrue. While Plaintiff does suspect that someone, other than himself, may have caused the improper time entries, he has not identified the person responsible for the entries. He has also not offered evidence to justify a conclusion that a person other than himself was responsible for the time entries in question. *See also Parker v. Key Plastics, Inc.*, 68 F. Supp. 2d 818, 829-30 (E.D. Mich. 1999) (holding that a conclusory denial of workplace misconduct was insufficient to create a jury issue as to pretext); *Maddox v. Univ. of Tennessee,* 62 F.3d 843, 848 (6th Cir. 1995) (holding that workplace misconduct justifies discharge under the ADA). Thus, he has not provided sufficient evidence to create a triable issue as to pretext.

Because Plaintiff is not disabled and was discharged for a non-discriminatory reason, Plaintiff likewise cannot prevail on his claim that Defendant violated the ADA by failing to accommodate a request by him for a workplace accommodation.[1]

For these reasons, summary judgment is appropriate as to the ADA claims.

**2. FMLA Claim**

The FMLA does prevent an employer from discharging an employee in retaliation for taking medical leave protected under the FMLA. Plaintiff proves a *prima facie* case under the FMLA by presenting evidence that he exercised a right under the FMLA (*i.e.,* took leave), that he was adversely affected by an employment decision, and that proximity in time suggests a causal connection between the exercise of the protected right and the adverse employment decision. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001). The employer then bears the burden of articulating

---

[1] It is doubtful that such a request was made, *see* Boshaw Dep. 114-15; however, even assuming Plaintiff's argument that Plaintiff's request for leave was a request for an ADA accommodation, Plaintiff cannot prevail on this claim for the reasons given above.

a legitimate reason for the adverse action, unrelated to the taking of leave. *See Gibson v. City of Louisville,* 336 F.3d 511, 513 (6th Cir. 2003). If this burden is carried, then Plaintiff may still prevail by demonstrating a jury question as to whether the basis for discharge is pretextual. *Id.*

In the present case, there is sufficient evidence to show Plaintiff's *prima facie* case of FMLA discrimination–*i.e.*, Plaintiff was discharged soon after taking leave protected under the FMLA.[2] However, Plaintiff, as explained above and as in *Skrjanc*, has not presented any evidence sufficient to demonstrate that the employer's basis for discharge–the independent investigation and computer records which documented an alteration of time records for which Plaintiff was responsible–was pretextual. *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 779 (6th Cir. 1998)*; Arban v. West Publ'g Corp.,* 345 F.3d 390, 401 (6th Cir. 2003); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). Therefore, summary judgment is properly granted to the employer on this issue.

### 3. FLSA Claim

Plaintiff's Amended Complaint has also included a claim that he worked hours for which he did not receive proper overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq* ("FLSA"). The FLSA, 29 U.S.C. § 207(a)(1), requires overtime compensation at a rate of one and one-half times the employee's regular wage rate. However, the FLSA is subject to exemptions, including the exception for employees employed in a genuine administrative or executive capacity. 29 U.S.C. § 213(a)(1).

---

[2]While this is technically a sufficient *prima facie* case under the FMLA, it does not suggest in any way that the later discharge was retaliatory–it only indicates that the leave request was prompted by the investigation which eventually resulted in a non-pretextual discharge.

Such exemptions are proven based either on a "short test" or a "long test." In this case the question has been dispositively briefed on the "short test" which is applicable because the wage rate exceeded $250 per week (otherwise, the "long test" would be applicable). *See Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 515-16 (6th Cir. 2004). The following elements must be proven by a preponderance of the evidence by the employer to satisfy the "short test":

   (1) the employee is paid more than $250 per week;

   (2) the employee's primary duty consists of management; and

   (3) the employee regularly directs two or more other employees.

29 C.F.R. § 541.2(e)(2) (2003); *Renfro*, *supra*.

Although this Court is reluctant to grant summary judgment on an FLSA issue because of the burden of proof and because of the variety of work any employee may perform, in this case summary judgment is warranted by the admissions made by Plaintiff and unrebutted testimony. First of all, it is conceded in Plaintiff's Response that Plaintiff earned in excess of $250 per week for the relevant time periods. (Pl.'s Resp. 21.) Second, while it is less clear that Plaintiff has conceded that he directed two or more employees, he clearly did. He has admitted that he was responsible for supervising all store employees in the store (aside from the store manager and himself); these employees included the large number of cashiers, baggers and stockers employed in the store.

Third, and most significantly, Plaintiff's own testimony recognized that his primary job responsibility was employee management. (Boshaw Dep. 53-59.) While this is typically true of an assistant store manager, it was even more true of Plaintiff who, by his own admissions, supervised in *lieu* of the store director who was frequently absent from the store. (*Id.* 53.) This left Plaintiff, in his words, at a practical level, the "head man of the store." (*Id.*) While it is true that Plaintiff did perform

8

manual jobs at times, to spell resting employees and the like, he has not made any claim that such work was his predominant responsibility. Rather, the unanswered testimony of both the store director and regional district store director was that Plaintiff spent approximately 95% of his time engaged in management tasks. (Hess Dep. 14; Murphy Dep. 22-23.)

Accordingly, summary judgment must be granted in favor of the employer on this issue.

**STATE LAW CLAIMS**

As specified in § 1367 and in the common law–cases such as *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), even after federal claims are dismissed in suit, the federal court retains subject matter jurisdiction over state law claims subject to its own judgment as to whether to exercise such jurisdiction. While such is discretionary, the strong federal custom since *Gibbs* has been to dismiss those claims in order to permit state courts to decide their own law, as is their prerogative.

The history and operation of this statute was explained by the Sixth Circuit Court of Appeals in *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996):

> However, there is a second problem with the district court's assertion of supplemental jurisdiction over the unpled state law claims. On the particular facts of this case, it was an abuse of discretion to retain the state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended.
> *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) established the doctrine of supplemental jurisdiction as a matter of federal common law. Essentially, *Gibbs* held that a federal court can decide a state law claim that forms part of the same "case or controversy" as a claim over which the court has jurisdiction. *Ibid.* Since *Gibbs,* federal courts have expanded and shaped the doctrine of supplemental jurisdiction by applying it to new circumstances.
>
> In 1990, Congress passed a supplemental jurisdiction statute, now codified at 28 U.S.C. § 1367. Although § 1367 overruled *Finley v. United States,* 490 U.S. 545, 109 S. Ct. 2003, 104 L.Ed.2d 593 (1989) (restrictions on jurisdiction over third parties), the statute affirmed *Gibbs,* as interpreted by subsequent federal courts, as the proper measure of federal supplemental jurisdiction. . . .

> A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit,* 738 F.2d 163, 166 (6th Cir.1984). That discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power. *Gibbs* itself expressed one of the most important of these limits: "Certainly, if the federal claims are dismissed before trial, even though [the federal claims are] not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S. Ct. at 1139.
>
> The word "certainly" was effectively erased by *Rosado v. Wyman,* 397 U.S. 397, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970). There the Court held that a district court did not abuse its discretion in retaining jurisdiction over supplemental state law claims after it dismissed the touchstone federal claim for mootness before trial. 397 U.S. at 405, 90 S. Ct. at 1214. *Rosado* held that there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims. *Ibid.* Instead, the decision depends on "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L.Ed.2d 720 (1988). This approach was codified at 28 U.S.C. § 1367(c)(3), which provides that a district court "may" (rather than must) decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."

*Musson Theatrical, Inc.*, 89 F.3d at 1254.

In the instant case, the Court finds that the state law claims are best left to the state courts in order for them as a matter of comity to determine matters of state law which may be controversial. Therefore, the Court declines to exercise supplemental jurisdiction as to those claims and will dismiss them pursuant to 28 U.S.C. § 1367(c)(3).

## **CONCLUSION**

Accordingly, Judgment shall enter in favor of Defendant, dismissing all federal law claims with prejudice and all state law claims without prejudice.

                                               /s/ Richard Alan Enslen

DATED in Kalamazoo, MI:        RICHARD ALAN ENSLEN
    December 2, 2005            SENIOR UNITED STATES DISTRICT JUDGE